```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  GLENN TERRY,                                              :
                                                            :   MEMORANDUM DECISION AND
                                          Petitioner,       :   ORDER
                                                            :
                - against -                                 :   22-cv-3799 (BMC)
                                                            :
                                                            :
  JAIFA COLLADO, in his capacity as                         :
  Superintendent of Shawangunk Correctional                 :
  Facility,                                                 :
                                                            :
                                          Respondent.       :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 from his state court conviction on five related counts of illegal weapons possession. The Appellate Division reversed and vacated another count for attempted kidnapping, one of his top counts, on direct appeal. His primary contention in this habeas corpus proceeding appears to be that his counsel was constitutionally ineffective for not raising a Second Amendment challenge to two lower counts involving a Taser and stun gun under N.Y. Penal L. § 265.01(1). However, to even get to that issue, he has to provide a reason why the Court should consider it in light of the concurrent sentence doctrine. The Court will give the parties an opportunity to address that issue and defer final disposition of the petition pending further submissions.

## BACKGROUND

Some of the facts are set forth in the decision of the Appellate Division. See People v. Terry, 169 A.D.3d 938, 940, 94 N.Y.S.3d 320 (2nd Dep't), leave to app. denied, 33 N.Y.3d

1109, 106 N.Y.S.3d 655 (2019). They arise from petitioner's dissatisfaction with his former personal attorney for having obtained what petitioner believed to be an inadequate settlement.

Petitioner had retained the attorney to handle a personal injury action. In 2008, petitioner agreed to settle the case, but changed his mind after the settlement had been consummated. In 2013 or 2014, petitioner showed up twice without an appointment at the attorney's office, complaining each time that the settlement was too cheap. Upon hearing from his attorney that you can't open up a consummated settlement just because you want more, petitioner left angry. He also called his attorney several times to complain and sent multiple letters along the same lines.

On March 26, 2015, petitioner checked into a hotel near the attorney's office. On the morning of the next day, he drove to the attorney's office and stayed in the parking lot for about an hour before returning to his hotel.

Later that day, the police stopped petitioner's car near his hotel when they saw him speeding and making turns without signaling. The police saw a Taser cartridge on the car's dashboard, and upon inquiry, petitioner acknowledged it was a Taser cartridge and handed it to the officer. The officer then inquired whether petitioner had a Taser and he confirmed that as well, handing it over to them. When they asked him if he had any other weapons in the car, he confirmed that there was a 9mm handgun in the passenger seat pocket. He was placed under arrest.

Petitioner kept trying to explain to the officers both at the scene and in transport that he wasn't planning on hurting anybody, but his plan was to use the Taser to take his former attorney somewhere and get him to admit that the attorney had wronged him. He stated, "I was just planning on kidnapping my attorney."

On arrival at the precinct, petitioner emptied his pockets as directed and in his pocket was a handcuff key. Petitioner consented in writing to a search of his car and hotel room. The police subsequently recovered a handgun, duct tape, and a red gasoline can from the car.

During a second interrogation immediately following, in which petitioner waived his *Miranda* rights both orally and in writing, petitioner told his story about how he had been badly burned when he had a seizure and fell into a tub of scalding water due to a newly installed, defective hot water heater; that his attorney had sued and recovered $450,000; that he became very upset that the settlement was too low; and that he had mailed his attorney multiple letters seeking to understand why his lawyer had "destroyed" his life. Petitioner had also written letters to the appellate court and to Governor Cuomo because he thought they were all working against him. His statement acknowledged that his hope was to tackle his attorney, handcuff him, duct tape his mouth, and transport him to the house of petitioner's father. He insisted his effort was to scare his former attorney, not hurt him. He stated that he was unsure what he was going to do with the can of gasoline but that he had thought about dumping it on his attorney and letting him know how it would feel to be burned. Petitioner then handwrote a statement consistent with his oral statements and signed it.

There was also a duffle bag in petitioner's trunk, and the police found it contained a "last chance" letter written to Governor Cuomo and his lawyer. There were five similar letters to his lawyer. He had also prepared a letter for the lawyer to sign that said: "Please listen. This is a good man. I gave his burn case to the defense. He gave me many opportunities to fix this, but I chose not to. He deserves what is coming to him. I do not want to die. Please work with me. I am not pressing charges on this."

A jury convicted petitioner of:

3

- Count 1: Attempted kidnapping in the 2nd degree in violation of Penal Law §§ 110, 135.20.

- Count 2: Criminal possession of a weapon in the 2nd degree for possessing a loaded firearm outside of the defendant's home or business in violation of § 265.03(3).

- Count 3: Criminal possession of a weapon in the 2nd degree for possessing a loaded firearm with intent to use the same unlawfully against another in violation of § 265.03(1)(b).

- Count 4: Criminal possession of a firearm in the 3rd degree in violation of § 265.02(1). A defendant is guilty of this crime if he commits the crime of possession of a weapon in the 4th degree and has previously been convicted of any crime.

- Count 5: Criminal possession of a weapon in the 3rd degree for possessing an electronic dart gun in violation of § 265.02(1).

- Count 6: Criminal possession of a weapon in the 3rd degree for possessing an electronic stun gun in violation of § 265.02(1).

Petitioner was sentenced to 15 years on Count 1; 15 years on Count 2, to run consecutively to the sentence on Count 1; 15 years on Count 3, to run concurrently with the sentence on Counts 1 and 2; and 2 1/3 to 7 years on each of Counts, 4, 5, and 6, to run concurrently with each other and the sentence on Counts 1, 2 and 3. Thus, petitioner was sentenced to an aggregate of 30 years' custody.

On direct appeal, the Appellate Division vacated the conviction for attempted kidnapping (Count 1) on the ground of legal insufficiency – the Court found that petitioner's conduct did not come "dangerously near to committing the completed crime." Terry, 169 A.D.3d at 939-40, 94 N.Y.S.3d at 322 (internal quotations omitted). It affirmed his conviction on the remaining counts. That left him with an aggregate sentence of 15 years.

Petitioner then brought a collateral challenge to his conviction under N.Y. Crim. Pro. L. § 440.10. He alleged that his trial attorney acted or omitted to act in a variety of ways that

4

rendered the representation constitutionally ineffective. The § 440 court rejected each of those claims, some as procedurally barred, some on the merits, and some for both reasons. (To the extent petitioner's claims have been raised in the current petition, each of these arguments will be discussed below as necessary to address petitioner's points of error.) The Appellate Division denied leave to appeal.

## DISCUSSION

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254, permits relief only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (quotation omitted). A decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (citation and internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Since

5

Harrington, the Supreme Court has repeatedly admonished circuit courts for not affording sufficient deference to state court determinations of constitutional issues. See White v. Wheeler, 577 U.S. 73, 76-77 (2015) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" (quoting Burt v. Titlow, 571 U.S. 12, 19 (2013))).

A petitioner in a federal habeas corpus proceeding asserting ineffective assistance claims faces a double burden. He must meet not only the narrow standard of review under AEDPA described above but also the two-prong test of Strickland v. Washington, 466 U.S. 668 (1984). He must first show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. The Court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (citation omitted). Second, under the "prejudice" prong, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112. Moreover, as the Second Circuit has noted, "[t]he prejudice inquiry is . . . ineluctably tied to the strength of the prosecution's evidence." Garner v. Lee, 908 F.3d 845, 862 (2d Cir. 2018). Moreover, the Constitution does not entitle a petitioner to perfect representation. See United States v. Lane, 474 U.S. 438, 445 (1986) ("[T]aking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and . . . the Constitution does not guarantee such a trial." (citation omitted)).

## II. Sentencing Errors

Petitioner first contends that his trial counsel failed to prepare pre-sentence submissions with letters of support and a mental health assessment; that counsel failed to attend petitioner's pre-sentence interview with the Probation Department; and that he failed to meet with petitioner at the jail to prepare for sentencing and review the pre-sentence investigation report. He asserted that doing these things would have resulted in less than two consecutive 15-year terms.

The § 440 court denied this claim on alternative grounds: (1) a § 440.10 proceeding is not the proper motion to raise a sentencing argument; and (2) on the merits. As to the merits, the § 440 court held that "many of these assertions are belied by the record. The record indicates that defense counsel submitted, and the Court considered, letters on behalf of the defendant, a sentencing packet and a neuro-psychological evaluation prepared by a doctor referred to by the Court as 'very well respected.'"

The § 440 court greatly understated the weakness of petitioner's argument. The § 440 court's reference to letters, a sentencing packet, and a neuro-psychological evaluation only partially describes trial counsel's efforts. A review of the record indicates that trial counsel provided the sentencing court with a comprehensive neuro-psychological evaluation prepared by Alexander Sasha Bardey, M.D. and Kate Termini, Psy.D. At sentencing, the court noted that counsel "put together a package for me prior to today, which I have read and carefully considered, and it's a very good package, including a very good report, psychiatric evaluation from a very well-respected doctor." The sentencing court also acknowledged having read letters from petitioner's family members.

Faced with this, in reply, petitioner argues that trial counsel should have provided an "overview" that explained the relevance of the brain injury to petitioner's flawed decision-

7

making. The argument borders on the absurd. To contend that the delta between petitioner's current position of what should have been done and what the attorney actually did rises to the level of objective unreasonableness, especially when viewed through the lens of AEDPA, is fanciful. Petitioner cites no cases, let alone Supreme Court cases, with facts that are anywhere near similar. All the Sixth Amendment required was that petitioner's trial counsel put together a reasonable sentencing package. He clearly did that.

Because the assertion of objective unreasonableness is so farfetched, it is no wonder that petitioner cannot show prejudice. He is asking this Court to find that if trial counsel had done it his way, there is a reasonable probability that petitioner would have received a lighter sentence. See Strickland, 466 U.S. at 700. I don't see how anyone could possibly reach that conclusion. The same is true with respect to petitioner's claims that counsel should have attended the interview between him and the probation officer; that counsel should have traveled to the Suffolk County Jail to meet with petitioner before sentencing; and that counsel should have gone over the PSR with petitioner. There is no Supreme Court authority requiring trial counsel to have taken these steps, and no basis to believe that had he done so, it is reasonably likely that petitioner would have received a lower sentence.

Whether reviewed under Strickland de novo or through AEDPA's restrictive lens, these claims fail.

### III. Expert Testimony

As part of its proof on the 9mm, Taser, and stun gun charges, the prosecution called an expert, George Krivasta, to explain to the jury what these weapons do and how they work. Krivasta testified as to the operability of the Taser:

> This particular weapon it's fed by having batteries that are inserted in it. Once the batteries are present in it, it has a trigger that allows it to activate. When that activates, you would have a very high voltage electrical stimulus that can be going across these contacts that are out. If these contacts are in proximity to an individual or in contact with them, essentially two things happen. Depending on the muscle groups that are contacted, it interferes with the body's normal function of firing electronic signals to muscles. So if I were to contact my arm, I would literally lose all use of this arm during the period that the stimulation is given. In addition to that, depending on the strength of the unit, for a period thereafter, it may take a while before I gain good use of that arm back. In addition to that, it is severe pain, and from that you can generally get compliance from the individual . . . by administering severe pain.

He also testified as to his experience in getting tasered.

> Q. Have you, yourself been tasered?
> A. Yes.
> Q. What effects did it have on you?
> A. Hurts like hell and whatever muscles were involved, I lost muscle control of it.

Before the § 440 court, petitioner argued that this testimony was prejudicial and would have been excluded had trial counsel provided effective assistance. Petitioner argues that defense counsel should have stipulated to the operability of the Taser so that this testimony would have been unnecessary.

He also makes what is in effect a "spillover argument," that the bottom counts tainted the jury's consideration of the top counts. This argument appears to run thusly: (1) had trial counsel moved to dismiss Counts 5 and 6 as unconstitutional, the Taser and stun gun charges would have been dismissed; (2) with those charges dismissed, the Krivasta testimony about Tasers would have been excluded; and (3) petitioner would have avoided the prejudice he suffered as to Counts 2, 3, and 4 from having the jury hear this harmful testimony.

The § 440 court again rejected this testimony as procedurally barred (in that it should have been raised on direct appeal) and without merit: "In any event, the testimony was brief, trial counsel raised objections to portions of this witness' testimony and cross-examined the witness.

9

Under these circumstances, trial counsel will not be found to have provided ineffective assistance for failure to make applications or arguments that have no chance of success."

For present purposes, I will assume that the parties could have reached a stipulation that negated the need for this testimony. I will also assume arguendo – for purposes of petitioner's spillover argument – that his first two propositions are correct, i.e., that Penal Law § 265.02(1) (prohibiting Tasers and stun guns) violates the Second Amendment and that if trial counsel had moved to dismiss them, the jury would not have heard Krivasta's testimony about the Taser. It doesn't matter. The § 440 court was clearly right that petitioner suffered no prejudice from this brief testimony.

To see this, we need to take a step back to look at the evidence that the jury heard from the entire trial. Putting aside the Taser and stun gun, the evidence showed that petitioner was caught stalking his attorney with handcuffs, a 9mm handgun capable of inflicting death or permanent severe damage, duct tape, and a can of gasoline (all of which he bought in Florida and drove from there to his attorney's office); letters to Governor Cuomo and his attorney complaining of the attorney's representation; and a letter he drafted for his attorney to sign in which the attorney would have acknowledged that he was under threat of death but that petitioner's actions were justified. Petitioner then gave multiple statements to the police in which he admitted stalking his attorney and that he had contemplated pouring gasoline on him, obviously to create a fear of imminent death.

Petitioner cannot seriously contend that Krivasta's testimony played any role in convicting him on Counts 2 and 3. The jury convicted him on those counts based on what he had said and done – not on the fact that it hurts to get tasered. Once again, petitioner points to no

10

Supreme Court case that was contrary to the § 440 court's decision nor that it unreasonably applied.

## IV. The Concurrent Sentence Doctrine

The above analysis suggests that there is no basis for granting relief as to Count 2 – possession of an unlicensed 9mm handgun outside of petitioner's home. That is one of his two counts of conviction for which he is serving a 15-year sentence (the other one, Count 3, possessing a firearm with intent to use it unlawfully, which ran concurrently to Count 2). Petitioner's remaining arguments are directed at Count 3 or one of the lower counts for which he was sentenced to 2 1/3 to 7 years – all of which run concurrently with his 15-year sentence on Count 2. However, it may be the case that no matter what ruling the Court might make, petitioner would still be left with the same 15-year sentence.

Federal courts do not give advisory opinions on alleged errors that would have no concrete impact on a defendant's sentence. The concurrent sentence doctrine "allows courts, in their discretion, to avoid reaching the merits of a claim altogether in the presence of an identical concurrent sentence since a ruling in the defendant's favor would not reduce the time he is required to serve or otherwise prejudice him in any way." Kassir v. United States, 3 F.4th 556, 561 (2d Cir. 2021) (cleaned up). It may be used by a court to avoid review of a conviction's validity in collateral proceedings "if the petitioner is concurrently serving an equal or longer sentence on another valid count of conviction." Id.

To apply the doctrine, "the court must foresee with reasonable certainty that the defendant will suffer no adverse collateral consequences from the court's decision to leave his conviction and sentence unreviewed." Id. (cleaned up). "As has traditionally been done, courts may look to the so-called Vargas factors [(United States v. Vargas, 615 F.2d 952 (2d Cir. 1980))]

11

to determine whether to rely on the concurrent sentence doctrine. These five factors – the unreviewed conviction's effect on the petitioner's eligibility for parole, the future application of recidivist statutes for a future offense by the petitioner, the petitioner's credibility in future trials, the possibility of pardon, and societal stigma of a conviction – provide helpful guideposts for discerning the impact of a decision to leave a conviction unreviewed." Id.

In Kassir, the Second Circuit weighed these factors and declined to consider collateral challenges to other counts when the defendant would still serve two concurrent life sentences even if those counts were vacated. Id. at 569. But the concurrent sentence doctrine is not limited to instances where the petitioner is serving a life sentence. For example, the Second Circuit applied the doctrine to affirm a challenged stalking charge, with a sentence of 240 months, where the petitioner did not challenge two kidnapping charges (or his sentence of 292 months on each), all three of which were to run concurrently. United States v. Torres, No. 21-2665-CR, 2023 WL 378942, at *1 (2d Cir. Jan. 25, 2023); see also United States v. Rodriguez, No. 05-CR-960, 2022 WL 158685, at *2 (S.D.N.Y. Jan. 18, 2022) (relying on concurrent sentence doctrine to deny petitioner relief, on the ground that "even if the Court were to vacate [petitioner's] § 924(j) conviction, [petitioner] would still be subject to a fifty-year term of imprisonment for his § 848(e)(1)(A) conviction.").

Petitioner's remaining arguments, all ineffective assistance claims, are these: (1) his counsel should have moved to dismiss Counts 5 and 6 as unconstitutional under the Second Amendment and Due Process Clause; (2) his counsel should have moved to reduce Count 4 from criminal possession in the third degree to criminal possession in the fourth degree because the statutory enhancement was based on an old, nonviolent misdemeanor conviction, thereby violating his right to due process; and (3) his counsel should have moved to dismiss Count 3

because the presumption in the statute (Penal Law § 265.14) that illegal possession of a weapon carries with it an intent to use the weapon unlawfully deprives him of due process.

Even if this Court ruled for him on all of these issues, it seems that petitioner would not receive any relief. He still would stand convicted of Count 2 and subject to its 15-year sentence. All the other sentences run concurrently with that count.

The parties, however, have not briefed the concurrent sentence doctrine, including the application of the factors under <u>Vargas</u> and other considerations that might weigh for or against reaching these additional issues (like constitutional avoidance). Accordingly, the Court will provide them with an opportunity to do so.

## CONCLUSION

The petition is denied in part as set forth above and ruling is deferred in part pending receipt of additional briefing on the concurrent sentence doctrine. The parties shall address that issue in subsequent briefing, both sides to file within 30 days of entry of this decision, with any responses filed within 14 days thereafter.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       June 16, 2023

13