```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  GLENN TERRY,                                              :
                                                            :   MEMORANDUM DECISION AND
                                      Petitioner,           :   ORDER
                                                            :
              - against -                                   :   22-cv-3799 (BMC)
                                                            :
                                                            :
  JAIFA COLLADO, in his capacity as                         :
  Superintendent of Shawangunk Correctional                 :
  Facility,                                                 :
                                                            :
                                      Respondent.           :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 from his state court conviction on five related counts of illegal weapons possession. By a prior Memorandum Decision and Order, see Terry v. Collado, No. 22-cv-3799, 2023 WL 4086345 (E.D.N.Y. June 20, 2023), familiarity with which is assumed, I denied the petition as to petitioner's challenge to his conviction for possession of an unlicensed 9mm handgun outside of his home. I directed the parties to show cause whether the concurrent sentence doctrine made it unnecessary for me to consider his attack on the four other counts of his conviction. Having considered the parties' submissions, I conclude that no ruling I make on the remainder of the petition would have any direct or indirect effect on petitioner, and I therefore deny the remainder of the petition under the concurrent sentence doctrine.

## BACKGROUND

The facts and history of the case are fully set forth in this Court's prior decision, but to summarize the relevant facts for present purposes, petitioner was convicted of 2nd degree

criminal possession of a loaded 9mm handgun outside of his home or business (Count 2). He was sentenced to serve 15 years on that count. He was also convicted of four other related counts stemming from his criminal possession of the handgun, a dart gun, and a taser: 2nd degree criminal possession of the handgun with intent to use the gun unlawfully against another (Count 3); 3rd degree criminal possession of the handgun (Count 4); and 3rd degree criminal possession of an electronic dart gun and electronic stun gun (Counts 5 and 6). He was sentenced to 15 years for Count 3, and 2 1/3 to 7 years on each of the other counts. Each of these sentences was to run concurrently with Count 2.

The charges arose out of petitioner's stalking of his former attorney to kidnap him and, at least, extract an admission from the attorney that the attorney had mishandled petitioner's personal injury case. According to his own statement, petitioner was going to extract this admission by threatening to burn the attorney alive after duct taping him and soaking him with gasoline. (Petitioner's personal injury case had arisen from a severe burn due to an allegedly defective product.)

In this Court's prior decision, I accepted, *arguendo*, petitioner's contention that his trial counsel was ineffective for not interposing various challenges to Counts 3 through 6.[1] Even assuming that, however, would still mean that petitioner was left with a 15-year sentence on Count 2. That was because petitioner's only argument as to how the submission of Counts 3 through 6 might have affected the jury's deliberations on Count 2 was that there was a "spillover effect" based on expert testimony relating to those counts. This testimony briefly described (in

---

[1] Petitioner had three ineffective assistance challenges to Counts 3 through 6: (1) counsel should have argued that the New York statutes prohibiting possession of dart guns and tasers are unconstitutional; (2) counsel should have argued the "presumption of intent to use" an illegal weapon, an element of Count 3, is unconstitutional; and (3) counsel should have moved to reduce Count 4 because it was predicated on an old, non-violent conviction.

about half a page on the transcript) how tasers work and what effect they have on the body.  I found that this expert testimony was brief and inconsequential in light of the overwhelming evidence of petitioner's guilt on Count 2 and therefore rejected that argument.

Although I have already ruled that the 15-year sentence on Count 2 does not support habeas corpus relief, petitioner urges me to consider his attacks on Counts 3 through 6.

## DISCUSSION

As I explained in the prior decision, the concurrent sentence doctrine "allows courts, in their discretion, to avoid reaching the merits of a claim altogether in the presence of an identical concurrent sentence since a ruling in the defendant's favor would not reduce the time he is required to serve or otherwise prejudice him in any way." Kassir v. United States, 3 F.4th 556, 561 (2d Cir. 2021) (cleaned up).  It may be used by a court to avoid review of a conviction's validity in collateral proceedings "if the petitioner is concurrently serving an equal or longer sentence on another valid count of conviction." Id.

To apply the doctrine, "the court must foresee with reasonable certainty that the defendant will suffer no adverse collateral consequences from the court's decision to leave his conviction and sentence unreviewed." Id. (cleaned up).  "As has traditionally been done, courts may look to the so-called Vargas factors [(United States v. Vargas, 615 F.2d 952 (2d Cir. 1980)] to determine whether to rely on the concurrent sentence doctrine.  These five factors – the unreviewed conviction's effect on the petitioner's eligibility for parole, the future application of recidivist statutes for a future offense by the petitioner, the petitioner's credibility in future trials, the possibility of pardon, and societal stigma of a conviction – provide helpful guideposts for discerning the impact of a decision to leave a conviction unreviewed." Id.

In Kassir, the Second Circuit weighed these factors and declined to consider collateral challenges to other counts when the defendant would still serve two concurrent life sentences even if those counts were vacated. But the concurrent sentence doctrine is not limited to instances where the petitioner is serving a life sentence. For example, the Second Circuit applied the doctrine to affirm a challenged stalking charge, with a sentence of 240 months, where the petitioner did not challenge two kidnapping charges (or his sentence of 292 months on each), all three of which were to run concurrently. See United States v. Torres, No. 21-2665-CR, 2023 WL 378942, at *1, *6 (2d Cir. Jan. 25, 2023); see also United States v. Rodriguez, No. 05-cr-960, 2022 WL 158685, at *2 (S.D.N.Y. Jan. 18, 2022) (relying on concurrent sentence doctrine to deny petitioner relief, on the ground that "even if the Court were to vacate [petitioner's] § 924(j) conviction, [petitioner] would still be subject to a fifty-year term of imprisonment for his § 848(e)(1)(A) conviction.").

In the instant case, any ruling I might make on Counts 3 through 6 would not change the fact that petitioner still must serve 15 years on Count 2. His efforts to show that there is nevertheless some reason to address his ineffective assistance claims as to Counts 3 through 6 are not persuasive.

First, petitioner seeks to reargue my determination that there has been an insufficient showing of a spillover effect. I adhere to my prior determination. The jury was presented with overwhelming evidence of a horrific scheme to at least terrify petitioner's former attorney, if not cause him serious harm. Petitioner's possession of a 9mm handgun, duct tape, a can of gasoline, a compelled letter of admission that he intended to force his attorney to sign, other draft letters written to public officials, evidence of stalking, and petitioner's unqualified oral and written

4

statements to the police dwarfed the expert's brief testimony that it hurts to get tased. The jury surely understood that it hurts to get shot and immolated even more.

Second, petitioner suggests, although he does not expressly argue, that the application of the concurrent sentence doctrine is reserved for appellate dispositions. He cites no case to support that, and, as indicated by the citation above to Rodriguez, district courts in this Circuit regularly apply it. See e.g. United States v. Ismoil, No. 93-cr-180, 2023 WL 5029168 (S.D.N.Y. July 18, 2023); Kendrick v. United States, No. 22-cv-6510, 2023 WL 3878327, at *14 n.11 (W.D.N.Y. June 7, 2023); Gayot v. New York, No. 19-cv-4657, 2022 WL 280771, at *17 n. 22 (E.D.N.Y. Jan. 31, 2022); McGough v. Lee, No. 17-cv-847, 2019 WL 2869438, at *8 (N.D.N.Y. July 3, 2019). Moreover, there are certainly similarities between § 2254 review and appellate review. And the purpose of the concurrent sentence doctrine is to conserve judicial resources. No decision suggests that conserving federal appellate court resources has a higher priority than conserving federal district court resources.

Petitioner makes a cursory attempt to distinguish cases like those cited above. He first argues they arise in the § 2255 habeas context rather than the § 2254 habeas context, but as the citations above show, that is not accurate. See also Steve B.J. v. Carpinello, No. 06-cv-1220, 2008 WL 2600678 (S.D.N.Y. June 27, 2008); Serrano v. Smith, No. 05-cv-1849, 2007 WL 4591965 (S.D.N.Y. Dec. 21, 2007); Padilla v. Mann, No. 92-cv-6642, 1994 WL 542247, at *8 (S.D.N.Y. Oct. 4, 1994). Nor does petitioner explain why it should make any difference, especially considering that the scope of § 2254 review is sometimes more restrictive than that of § 2255 review. Cf. Cross v. Perez, 823 F. Supp. 2d 142, 149 (E.D.N.Y. 2011) (greater showing required to demonstrate invalidity of appellate waiver under § 2254 than under § 2555).

Petitioner also asserts that in most of these cases, the respondent raised the concurrent sentence doctrine, whereas in the present case, the Court has raised it *sua sponte*. That is also not a fully accurate characterization of the cases cited above. In any event, I see no difference, as long as the parties are provided with notice and an opportunity to respond, which the Court provided here.

This is consistent with other limitations doctrines on habeas corpus review such as Stone v. Powell, 428 U.S. 465 (1976), another doctrine aimed at conserving judicial resources by conditionally excluding Fourth Amendment claims from habeas corpus review. The Second Circuit has held that the rule in Stone may be raised by the district *sua sponte* as long as the court provides notice and an opportunity to be heard before ruling. Ethridge v. Bell, 49 F.4th 674 (2d Cir. 2022). Like the rule in Stone, the concurrent sentence doctrine relies on "the authority of courts to raise *sua sponte* affirmative defenses where the defense implicates values beyond the interests of the parties." Id. at 681. Both doctrines have the same aim of conserving judicial resources in habeas corpus proceedings under 28 U.S.C. § 2254.

Finally, relying on Ray v. United States, 481 U.S. 736 (1987), petitioner argues "upon information and belief" that because the state court imposed statutory surcharges on Counts 3 through 6, there are collateral consequences remaining from his conviction on those counts. However, as respondent points out, petitioner's information and belief are wrong. The record shows clearly that one $300 surcharge, a crime victim assessment fee of $25, and a $50 DNA databank fee were applied collectively as to all counts. Vacating any one of Counts 3 through 6 would leave him owing just as much money as not vacating those counts.

For similar reasons, it is not surprising that petitioner cannot show that any of the five Vargas factors work in his favor. Indeed, he has not even tried. This is because all counts are

inextricably intertwined and part of the *res gestae* of the crime. A look at the Vargas factors demonstrates this.

First, petitioner can hardly argue that Counts 3 through 6 will affect his eligibility for parole. Any parole board will certainly know of the underlying facts on these counts, whether or not those convictions stood. Nor is there any reason to believe that he is more likely to be pardoned if Counts 3 through 6 are set aside than if they stand, as any pardoning authority would have to consider the facts behind those counts. Nor has he argued that some hypothetical impact of recidivist statutes will attach to those counts. He has pointed to no statute that would trigger recidivist status as a result of Counts 3-6, let alone that there is a reasonable possibility of his being prosecuted under a statute. As to his credibility at trial, there would be no marginal increase in the loss of his credibility beyond that caused by his impeachment on Count 2. Finally, there is no discernable increase in any social stigma attaching to Counts 3 through 6 as compared to Count 2 alone.

For these reasons, I decline to review Counts 3 through 6 pursuant to the concurrent sentence doctrine.

## CONCLUSION

The petition is denied and the case is dismissed. No certificate of appealability shall issue under 28 U.S.C. § 2253(c)(1)(A) because "the applicant has [not] made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
    August 20, 2023